UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

|  |  |  |
|---|---|---|
| ADAM GLENN HELTON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6:22-CV-140-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| WHITLEY COUNTY FISCAL COURT, | ) | **ORDER** |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Before the Court is Defendants' Motion for Summary Judgment. [R. 39]. The motion, submitted on behalf of Defendants Whitley County Fiscal Court, Danny Moses, and Mike Lawson, seeks summary judgment on all Plaintiff Adam Glenn Helton's claims against them. [R. 39, p. 2]. Plaintiff responded in opposition, [R. 47], and Defendants replied [R. 50]. The motion is ripe and ready for review. For the reasons that follow, the Court will grant Defendants' Motion for Summary Judgment on all of Plaintiff's claims.

## I.     BACKGROUND

The instant action arose out of events that took place on July 7, 2021. Defendant Mike Lawson, Deputy Sheriff of the Whitley County Police Department, was dispatched to Barbara Ridner's residence related to an incident involving some mailboxes. [R. 36, p. 18 (Ridner Deposition)]. When Officer Lawson arrived at the Ridner residence, he interviewed Ridner, Plaintiff's first cousin, about what had occurred; Ridner reported to Officer Lawson that her mailbox, and the mailbox belonging to her sister, Sheila Mae Robbins, had been uprooted and thrown next to their houses down the driveway. *Id.* at 19:1–5.

- 1 -

A dispute had been brewing between Ridner and Plaintiff about the placement of Ridner's and Robbins's mailboxes. Ridner testified that, when she initially sought to have a mailbox placed on the road on which she lived, she spoke with a postal service employee in Williamsburg, Kentucky. *Id.* at 16:5–24. The postal service placed a flag at the spot on the road where her mailbox should go to be within the postal service's easement. *Id.* at 16:25–17:3. She and Robbins placed their mailboxes there. *Id.* Their mailboxes had been uprooted several times before July 7, 2021, and Ridner suspected that Plaintiff may have been the person who removed them. *Id.* at 12:7–24, 13:19–14:8.

Plaintiff testified that he visited the post office prior to July 7, 2021, and he asserts that, after he told "the postmaster his situation," the postmaster told him to "[p]ut a lock on it, or remove it." [R. 50-2, p. 80:10–13 (Helton Deposition)]. Plaintiff hired an attorney, who sent letters to Ridner and Robbins on April 5, 2021, claiming that the mailboxes needed to be removed since they were on Plaintiff's property.[1] [R. 36, p. 17:5–6]; [R. 50-2, pp. 82:22–84:3]. After receiving this letter, Ridner testified that she went to the post office and the courthouse to ensure that she did not need to relocate her mailbox, and she was assured by employees that the mailboxes were properly placed. [R. 36, pp. 17:25–18:4, 27:8–18]. She and Robbins took no further action after these discussions at the post office and courthouse. *Id.* at 17:23.

Turning back to July 7, 2021, as part of his investigation, Lawson interviewed Ridner and measured the space between the road and the location where the mailboxes had been prior to their removal. [R. 50-1, pp. 21:15–17, 29:22–30:9 (Lawson Deposition)]. He determined that the mailboxes had been within the typical distance from the road to likely be part of an easement used

---

[1] Although this attorney letter was referenced in Ridner's deposition, *see* [R. 36, pp. 8:20–9:14], and Plaintiff's deposition, *see* [R. 50-2, pp. 82:22–83:20], the letter was not filed in the record, so the Court is unable to review its contents.

by the United States Postal Service. [R. 36, pp. 18:19, 21:14, 24:4–5]; [R. 39-7 (Criminal Complaint Warrant)]; [R. 50-1, pp. 29:22–30:9]. He based this assessment on the measurements provided by the post office when he called them to confirm the right of way:

> Q:    All right. Now, you have contended that these mailboxes were on—I think you used two words, right of way—it's a phrase actually—and easement. Did you do any research before obtaining this arrest warrant to make sure that they were in fact on an easement or right of way?
>
> A:    Yes, sir. I mean, I did call the Post Office and they told me what the easement—what the right of way is for, you know, the—mailboxes, which is why I took the measurement.
>
> Q:    And tell me what the Post Office told you about the right of way or easement.
>
> A:    That there was an easement or a right of way, whichever term you want to use, for mailboxes.
>
> Q:    And how long was that?
>
> A:    That I don't remember.

[R. 50-1, pp. 29:19–30:9]. He also estimated the cost to replace and install the mailboxes. [R. 39-6 (Itemized List for Destruction of Mailboxes)]. Lawson's investigation took about 30–45 minutes. [R. 36, p. 24:5–6]; [R. 50-2, p. 93:9].

Lawson also briefly spoke to Plaintiff at the scene. [R. 50-2, p. 95:1–14]. Lawson asked Plaintiff if he was the individual who destroyed the mailboxes belonging to Ridner and Robbins, and, per Lawson, Plaintiff admitted at the scene to doing so. [R. 50-1, p. 13:2–7]. Plaintiff says that he responded "no" when Lawson asked him if he had destroyed the mailboxes, [R. 50-2, p. 95:1–5], though in his deposition he acknowledged he had pulled them up from the ground and placed them in Ridner's and Robbins' yards. *Id.* at 89:1–90:12. Ridner testified that she witnessed Plaintiff admit "[a] couple of times" to removing the mailboxes while Defendant Lawson was at the scene. [R. 36, p. 22:23–24].

- 3 -

Plaintiff testified that when Lawson pulled up to talk with him, he (Plaintiff) went to his vehicle to retrieve the attorney letter. [R. 50-2, p. 97:9–12]. Plaintiff alleges that, while he was searching his vehicle for the letter, Lawson placed his hand on his holster but did not brandish his weapon:

> Q:     Okay. So you were in the truck when he showed up?
>
> A:     He pulled in behind me. He was getting out; I opened the truck to get this piece of paper.
>
> Q:      Uh-huh (affirmative response). Okay.
>
> A:     And I guess that scared him, and . . .
>
> Q:      So he put his hand on his side. Is that what you're saying?
>
> A:     Yeah. Yeah.

*Id.* at 97:9–17. Plaintiff testified that he then tried to show Lawson the letter and that Lawson "took" the letter from him, threw it on top of Plaintiff's vehicle, and said "I don't care." *Id.* at 92:6–13, 97:18–98:4, 127:24–128:5.

Ridner testified that she did not see Lawson throw the letter onto Plaintiff's vehicle or threaten Plaintiff in any way [R. 36, pp. 22:25–24:24]. Instead, Ridner claimed that Lawson "was very professional" and conducted himself in a civil manner; it was Plaintiff, according to Ridner's testimony, who shook the letter at Lawson and unsuccessfully attempted to "provoke" Lawson into an altercation. *Id.* at 21:12–15, 21:20–25, 22:25–23:23. Plaintiff likewise testified Officer Lawson never touched or threatened him:

> Q:     Did he ever touch you in any way?
>
> A:     No. No. He was going to pull his gun on me, but no.
>
> Q:     Okay. He never touched you?
>
> A:     No.

[R. 50-2, pp. 96:24–97:3].

> Q:    He never said anything to threaten you, verbally?
>
> A:    No. No. He got in his car and left.

*Id.* at 98:12–14.

> Q:    Okay. All right. So in Count 2, you allege assault and battery. As I understood you to say, Officer Lawson never touched you. Correct?
>
> A:    Uh-huh (affirmative response). That's right.
>
> Q:    So he didn't physically harm you in any way, did he?
>
> A:    No, he did not.

*Id.* at 122:23–123:5. Plaintiff estimated his entire encounter with Officer Lawson lasted "[m]aybe a minute. It wasn't long at all." *Id.* at 98:10–11. Lawson left the Ridner residence on July 7, 2021 without arresting Plaintiff. [R. 50-1, p. 14:17–21].

Based on Ridner's and Plaintiff's interviews at the scene, the estimated costs of the damage to the mailboxes, and Defendant Lawson's measurements and research concerning the easement, Lawson drafted an arrest warrant for Plaintiff on one felony count of Criminal Mischief in the First Degree. [R. 50-1, pp. 13:8–14:11]; [R. 39-4 (Memorandum Uniform Citation)]; [R. 39-6]. In the warrant, Lawson summarized the ground for arrest based on his investigation:

> The Affiant, Mike Lawson (WHITLEY COUNTY SHERIFF DEPT. 184), states that on 7/7/2021 at 15:00 in WHITLEY County, Kentucky, the above named defendant unlawfully: offender, having no right or permission to do so, pulled two mailboxes out of the ground located at ███ River Road and threw them in the affiant's yard. Mailboxes were 2' 10'' from the edge of the roadway clearly in the county right of way and not on private property. Cost to the affiant for installation and replacement of mailboxes was estimated at $1,100.00.

[R. 39-7].[2] As relevant here, the affiant was Officer Lawson, not Ridner, so it was technically untrue that Plaintiff "threw them [the mailboxes] in the affiant's yard." *Id.* A local judge signed off on the warrant. [R 50-1, p. 14:5–8]; [R. 39-7]. Lawson stated that he was not able to find Plaintiff to arrest him, but another officer later located Plaintiff and arrested him about a month later on August 3, 2021. [R. 39-4]; [R. 50-1, pp. 15:11–16:1]. The criminal mischief charge was later amended, and then dismissed on May 23, 2022, after Plaintiff ultimately stipulated to probable cause and paid Ridner $500 in restitution. [R. 39-3 (Whitley District Court Docket Sheet)]; [R. 40 (Conventional Filing) (video file from Whitley District Court hearing)].

Plaintiff's Complaint is less than a model of clarity. To the best this Court can decipher, Plaintiff sued Whitley County Deputy Sheriff Mike Lawson, Sheriff Danny Moses, and Whitley County Fiscal Court on the following grounds. First, Plaintiff sued Lawson, in his individual and official capacities, under 42 U.S.C. § 1983 for wrongful arrest and unlawful imprisonment in violation of the Fourth and Fourteenth Amendments[3] (Count I). [R. 1, pp. 3–4]. He sued Lawson, in his individual and official capacities, for assault and battery, intentional infliction of emotional distress ("IIED"), and outrageous conduct (Count II). *Id.* at 4–5. Plaintiff sued Sheriff Moses, in his official capacity, and Whitley County Fiscal Court, under 42 U.S.C. § 1983 for implementing a policy or practice of negligent hiring and retention ostensibly in deliberate indifference to Plaintiff's constitutional rights. (Count III).[4] *Id.* at 5–6. He sued Lawson, in his individual and

---

[2] The Court ordered the warrant to be filed under seal because it contained "sensitive, personal information," *see* [R. 42], so the street number included in the warrant has been redacted in this memorandum.

[3] The plaintiff mentions the Kentucky Constitution once in his Complaint but does not specify any claims through which he is seeking relief. The Court will not address this undeveloped claim.

[4] Plaintiff's Complaint fails to recite any specific constitutional provision he claims was violated, so the Court is left guessing what constitutional claim he attempts to bring. Further, it is entirely unclear whether he also attempts to bring a common law claim for negligence, given the vague and wholly undeveloped reference to "failure to exercise ordinary care" in his Complaint. [R. 1, ¶ 21]. Regardless, he abandoned these claims, whether federal or state, in failing to respond to Defendants' argument and evidence regarding Count III. *See infra* Section III.B.

- 6 -

official capacities, for fraud (Count IV). *Id.* at 6–7. Finally, he sued Lawson, in his individual and official capacities, Moses, in his official capacity, and Whitley County Fiscal Court, for punitive damages (Count V). *Id.* at 7–8. Plaintiff seeks $1,000,000 in general and compensatory damages and $1,000,000 in punitive damages. *Id.*

Defendants moved for Summary Judgment on March 15, 2024, arguing that "no material issues of fact [exist] that would warrant any recovery against these Defendants, and immunity acts as a bar to the claims alleged." [R. 39-1, p. 4]. Plaintiff filed a response.[5] [R. 47]. Defendants filed a reply. [R. 50]. This matter is ripe for review.

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, a court may grant summary judgment if it finds "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted); *see also Anderson*, 477 U.S. at 256. That burden may be satisfied by demonstrating that there is an absence of evidence to support an essential element of

---

[5] The Court notes that Plaintiff did not comply with Rule 11(a) of the Federal Rules of Procedure, which requires that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name." Fed. R. Civ. P. 11(a).

the non-moving party's case for which he or she bears the burden of proof. *Celotex Corp.*, 477
U.S. at 323.

Once the moving party satisfies this burden, the non-moving party must then produce
"specific facts, supported by the evidence in the record, upon which a reasonable jury could find
there to be a genuine fact issue for trial." *Bill Call Ford, Inc. v. Ford Motor Co.*, 48 F.3d 201, 205
(6th Cir. 1995) (citation omitted); *see Turner-Meadows v. GM, LLC*, 786 Fed. App'x 592, 595–96
(6th Cir. 2019). "The evidence of the non-movant is to be believed, and all justifiable inferences
are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, the Court is not obligated to
"search the entire record to establish that it is bereft of a genuine issue of material fact." *In re
Morris*, 260 F.3d 654, 665 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty
to direct the court's attention to those specific portions of the record upon which it seeks to rely to
create a genuine issue of material fact." *Id.*

In fact, the Federal Rules of Civil Procedure require the non-moving party to present
specific facts showing that a genuine factual issue exists by "citing to particular parts of materials
in the record including depositions, documents, electronically stored information, affidavits or
declarations, stipulations (including those made for purposes of the motion only), admissions,
interrogatory answers, or other materials" or by "showing that the materials cited do not establish
the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla
of evidence in support of the [non-moving party's] position will be insufficient; there must be
evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S.
at 252. Ultimately, if the record, taken as a whole, could not lead the trier of fact to find for the
nonmoving party, then there is no genuine issue of material fact and summary judgment is

appropriate. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## III.    ANALYSIS

Defendants make several arguments as to why they are entitled to summary judgment on all of Plaintiff's claims, including qualified immunity, sovereign immunity, and further that there is no genuine dispute as to any material fact concerning Plaintiff's federal and state claims. *See* [R. 39-1]. Plaintiff's response largely fails to address the arguments raised by Defendants, fails to cite to the record, and only cites to caselaw reciting the general legal standard for summary judgment. *See* [R. 47]. Indeed, Plaintiff wholly failed to respond to Defendants' arguments on Counts III, IV, and V.[6] *Id.* The Court considers each of Plaintiff's claims in turn.

### A.    Count I: § 1983 Claim for Violation of Fourth Amendment

### 1.    Individual Capacity Claims - Qualified Immunity

In Count I, Plaintiff asserts a claim against Defendant Lawson, in his individual and official capacities, for "wrongful arrest and unlawful imprisonment" under 42 U.S.C. § 1983. [R. 1, p. 3–4]. "In order to establish a claim under § 1983, a plaintiff must establish that a defendant: (1) was acting under color of state law,[7] and (2) deprived [him] of rights, privileges or immunities secured by the Constitution or laws of the United States." *Burden v. Paul*, No. 2009-105, 2011 WL 4431819, at *3 (E.D. Ky. Sept. 22, 2011); *see also Farris v. Oakland Cnty., Mich.*, 96 F.4th 956, 963 (6th Cir. 2024).

---

[6] In his response, Plaintiff also alleged that discovery was "ongoing" and that the Court should not grant this motion "prematurely." [R. 47, p. 1]. The Court, however, agrees with the Defendants on this issue—discovery has ended. [R. 50, p. 1]. According to the final order extending the discovery deadline, [R. 30], discovery ended on September 30, 2023. *Id.* The record does not show where Plaintiff ever sought to extend discovery past this deadline, and Plaintiff has not put forward any evidence of any outstanding discovery that may be helpful to his case.

[7] No one disputes this prong has been satisfied.

In considering Plaintiff's § 1983 claim, the Court first turns to whether Defendant Lawson, in his individual capacity, is entitled to qualified immunity on this claim, as argued by Defendants. [R. 39-1, pp. 12–14]. To defeat a claim of qualified immunity, "the evidence viewed in the light most favorable to the plaintiff[] must permit a reasonable juror to find that: (1) the Officers violated a constitutional right; and (2) the right was clearly established." *Lewis v. Tackett*, 697 F.Supp.3d 702, 717 (E.D. Ky. 2023); *see also Kovacic v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 724 F.3d 687, 695 (6th Cir. 2013).

Before turning to this qualified immunity analysis, however, the Court must first identify the nature of Plaintiff's alleged constitutional violation. As previously noted, Plaintiff's complaint is less than clear. In his "Material Facts" section, which comprises only three short paragraphs, he alleges that Defendant Lawson "swore out a false criminal complaint," and as a result of "the false statements in the criminal complaint," an arrest warrant issued, ultimately resulting in Plaintiff's wrongful arrest. [R. 1, ¶ 7]. As for Count I, his § 1983 "wrongful arrest and unlawful imprisonment claim," Plaintiff alleges that Defendant Lawson violated his Fourth and Fourteenth Amendment rights against unreasonable search and seizure by arresting him "without just and legal cause."[8] *Id.* ¶ 11. He further asserts that the Lawson's actions were "fraudulent and thus not objectively reasonable under the circumstances." *Id.* However, Plaintiff does not identify any allegedly false

---

[8] The Court will grant summary judgment for the Defendants on Plaintiff's Fourteenth Amendment claim to the extent that claim asserts a Due Process violation. The Supreme Court has determined that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). Here, Plaintiff has alleged that Defendant Lawson violated his constitutional rights by engaging in an "unreasonable search and seizure." [R. 1, ¶ 11]. "It is well-established that the Fourth Amendment provides the proper analytical framework for evaluating an unreasonable seizure claim, not the Fourteenth Amendment." *Scofield v. City of Detroit*, 490 F.Supp.3d 1213, 1222 (E.D. Mich. Sept. 29, 2020); *see Tapp v. O'Nan*, No. 4:18-CV-P133, 2019 WL 3938480, at *3 (W.D. Ky. Aug. 20, 2019) ("The Fourth Amendment is the proper vehicle to assert Plaintiff's claims in the instant action."). Further, because Plaintiff's claims are based on wrongful arrest and unlawful imprisonment, "the claim cannot be pursued under the Fourteenth Amendment" anyway. *Woodhead v. Ridener*, No. 5:21-CV-189-DCR, 2021 WL 4097137, at *2 (E.D. Ky. Sept. 8, 2021) (explaining that the Fourteenth Amendment is not applicable "when the gravamen of a complaint is for arrest or detention without probable cause"); *see Jackson v. City of Washtenaw*, 310 F. App'x 6, 7 (6th Cir. 2009).

statements or fraudulent actions, and the complaint provides no further details or allegations relating to any such statements or actions.

Plaintiff's briefing in response to the Motion for Summary Judgment provides little insight on his §1983 claim against Lawson. Indeed, most of the brief, which totals only four pages of text, focuses on Plaintiff's assault and battery claims. *See* [R. 47, pp. 1–4]. Then, with respect to Count I, his § 1983 claim against Lawson, Plaintiff states only that "Lawson (and, interestingly not the complaining parties) took out an arrest warrant against Mr. Helton without a reasonable basis to do so as he had not actually witnessed any criminal activity by Mr. Helton." *Id.* at 4.

From the best the Court can tell, Plaintiff attempts to attack the arrest warrant affidavit, arguing that Lawson lacked a reasonable basis to swear out the affidavit. To the extent his reference to a "reasonable basis" was an attempt to argue that Lawson lacked probable cause to swear out the affidavit, the Court notes that the arrest warrant was ultimately signed by a judicial officer. [R. 47, p. 4]; [R. 39-7]. In the context of the Fourth Amendment, "[p]olice officers are entitled to rely on a judicially secured warrant for immunity from a § 1983 action for illegal search and seizure unless the warrant is so lacking in indicia of probable cause, the official belief in the existence of probable cause is unreasonable." *Tlapanco v. Elges*, 969 F.3d 638, 649 (6th Cir. 2020) (quoting *Yancey v. Carroll Cnty., Ky.*, 876 F.2d 1238, 1243 (6th Cir. 1989)). "However, 'an officer cannot rely on a judicial determination of probable cause if that officer knowingly makes false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant.'" *Id.* (quoting *Yancey*, 876 F.2d at 1243). Accordingly, if a plaintiff seeks to challenge an officer's qualified immunity defense in a § 1983 case, the plaintiff may demonstrate that "(1) the officer's warrant affidavit contained a false statement or omission that was made either deliberately or with reckless disregard for the truth; and (2) the false statement or omission

was material to the finding of probable cause." *Id.* (citations omitted). "Once a plaintiff makes the first showing, the Fourth Amendment requires the court to 'set aside the [false] statements and include the information omitted in order to determine whether the affidavit is still sufficient to establish probable cause.'" *Id.* (quoting *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010)). "In other words, [Plaintiff] must show that the judge would not have issued the warrant without the allegedly false material." *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003).

Plaintiff has not cited to this test (or any other legal authority regarding qualified immunity or probable cause), nor made any effort to apply it to the facts of this case, instead providing only a single vague reference to an alleged lack of "reasonable basis" to swear out the affidavit. [R. 47, p. 4].[9] Nevertheless, having identified the appropriate test for challenging Defendant Lawson's qualified immunity defense, the Court turns again to the qualified immunity analysis. *See, e.g.*, *Kovacic*, 724 F.3d at 695 ("A defendant enjoys qualified immunity on summary judgment unless the facts alleged and the evidence produced, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." (quoting *Morrison v. Bd. of Trustees*, 583 F.3d 394, 400 (6th Cir. 2009) (internal quotation marks omitted))).

As to whether a clearly established constitutional right exists, the Court finds, and Defendants do not dispute, that Plaintiff enjoys a clearly established right to be free from unreasonable searches and seizures under the Fourth Amendment, and this includes the right to be free from arrest without probable cause, and "the right to be free from searches [and seizures]

---

[9] Plaintiff also mentions in his response brief that Lawson "witnessed no illegal acts by Mr. Helton." [R. 47, p. 3]. He does not develop this argument further, nor provide any authority for his position. Regardless, an officer does not have to "actually witness[]" a felony offense to seek an arrest, so long as the officer otherwise had probable cause. *United States v. Briggs*, 431 Fed. App'x 389, 395–96 (6th Cir. 2011) (finding that police officers had probable cause to arrest the defendant "even though they did not actually see him doing anything illegal").

predicated on an officer's intentional or reckless submission of false statements in a warrant affidavit." *Tlapanco*, 969 F.3d at 649 (quoting *McCallum v. Geelhood*, 742 F. App'x 985, 991 n.6 (6th Cir. 2018)) (internal quotation marks omitted).

However, when considering whether Lawson violated such a constitutional right, the Court is left wondering what facts and evidence of record support Plaintiff's claim, as he has failed to cite to the appropriate test for challenging qualified immunity based on a judicially signed arrest warrant, failed to cite to any evidence of record whatsoever, and failed to cite to any legal authority to support his position. Indeed, Plaintiff has failed to even *allege* any specific false statements or material omissions or other facts relevant to this Court's analysis.

Stated another way, Plaintiff's response wholly fails even to reference any allegedly false statements in the judicially authorized warrant, much less make the requisite initial showing that Officer Lawson "knowingly and deliberately or with a reckless disregard for the truth, made false statements or omissions that created a falsehood." *Id.* at 654. The response does not even challenge that Lawson had probable cause for the arrest or use the words "probable cause." [R. 47]. Instead, Plaintiff's sole argument concerning the circumstances of arrest is that Lawson "took out an arrest warrant against Mr. Helton without a reasonable basis to do so as he had not actually witnessed any criminal activity by Mr. Helton." *Id.* at 4. Given Plaintiff's complete failure even to argue— much less point to—evidence of "false statements or omissions that created a falsehood" and "were material to the finding of probable cause," the Court grants summary judgment on Count I, the § 1983 claim against Lawson in his individual capacity. [10] *Tlapanco*, 969 F.3d at 654; *see also*

---

[10] One final point bears mentioning, though Plaintiff failed to raise it. As outlined earlier, *see supra* p. 6, the arrest warrant affiant was Lawson, not Ridner, the victim. [R. 39-7]. The affidavit states Plaintiff "pulled two mailboxes out of the ground located at [] River Road and threw them in the *affiant's* yard." *Id.* (emphasis added). And while it is technically untrue that Plaintiff threw the mailboxes in "affiant's" (meaning Lawson's) yard, Plaintiff has failed to make *any* showing that this was a "knowing[] and deliberate[]" or "reckless" "false statement[ ] or omission[ ] that created a falsehood" and "[was] material to the finding of probable cause." *Tlapanco*, 969 F.3d at 654. As    Lawson explained in his deposition, it appears that he "checked the wrong box" when inputting the warrant into his computer

*Sumpter v. Wayne Cnty.*, 868 F.3d 473, 490 (6th Cir. 2017) ("[D]istrict courts cannot be expected to dig through the record to find the seeds of a party's cause of action." (*citing Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir. 1989))).

Moreover, to the extent Plaintiff has attempted to argue that there was no probable cause for issuing a warrant, the Court notes that Plaintiff stipulated to probable cause during his state court criminal mischief proceeding. *See* [R. 39-3]; *see also* [R. 40]; [R. 41 (notice that video file is maintained in the E.D. Ky. Clerk's Office)]. The Court has reviewed the video proceedings from Plaintiff's hearing in Whitley District Court, which demonstrate Plaintiff's lawyer, on the record and in the presence of Plaintiff, stipulated to probable cause for Plaintiff's arrest as part of the resolution of his criminal matter. [R. 40]. Further, Plaintiff acknowledged he was present for this hearing along with his lawyer, though he denied understanding that he was stipulating to probable cause for his arrest. [R. 50-2, pp. 116:5–117:3, 119:9–23]. "[E]xcept in limited circumstances, a stipulation of probable cause in an underlying criminal proceeding bars subsequent claims of false arrest, false imprisonment, and malicious prosecution under § 1983 and Kentucky common law." *Battle v. Parr*, No. 3:17-CV-500-DJH, 2018 WL 4558200, at *2 (W.D. Ky. Sept. 21, 2018); *see also Tlapanco*, 969 F.3d at 652 ("A showing of 'probable cause provides a complete defense to a claim of false arrest.'" (quoting *Halasah v. City of Kirtland*, 574 Fed. App'x 624, 629 (6th Cir. 2014))).

Indeed, on the face of the warrant, probable cause is apparent. Probable cause is evaluated using the "totality of the circumstances" and is defined as the "facts and circumstances within the

---

system, choosing the word "Affiant" instead of "Victim." [R. 39-7]; [R. 50-1, pp. 25:24–27:12]. This mistake constituted a technical error, and Plaintiff has not produced any argument (much less evidence) on how Lawson's mistake amounted to evidence that Lawson "knowingly and deliberately or with a reckless disregard for the truth, made false statements or omissions that created a falsehood." *Tlapanco*, 969 F.3d at 654. "A mere technical error does not automatically invalidate the warrant." *United States v. Carter*, 756 F.2d 310, 313 (3d Cir. 1985).

officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."[11] *Provience v. City of Detroit*, 529 Fed. App'x 661, 667 (6th Cir. 2013); *see also Tlapanco*, 969 F.3d at 652. The offense listed in the affidavit (and for which the warrant was eventually issued) is Criminal Mischief, 1st Degree. *See* [R. 39-7]. Under Kentucky law,

> (1) A person is guilty of criminal mischief in the first degree when, having no right to do so or any reasonable ground to believe that he or she has such right, he or she intentionally or wantonly:
>
> > (a) Defaces, destroys, or damages any property causing pecuniary loss of five hundred dollars ($500) or more;
>
> . . . .

Ky. Rev. Stat. Ann. § 512.020 (West). The affidavit explains Lawson's basis for believing that Plaintiff committed that offense. [R. 39-7]. Specifically, it states that, on July 7, 2021, Plaintiff, "having no right or permission to do so, pulled two mailboxes out of the ground located at ▇▇▇ River Road and threw them in the [victim's] yard." *Id.* The affidavit goes on to explain that the mailboxes were approximately 2'10" from the edge of the roadway, "clearly in the county right of way and not on private property." *Id.* The affidavit also provides that the cost for installation and replacement of the mailboxes was estimated to be $1,100. *Id.* From these sworn statements, it is clear that a reasonable and prudent person would conclude that Plaintiff committed the offense of Criminal Mischief, 1st Degree.

---

[11] Defendant Lawson in passing argues he cannot be sued for false arrest since he was not present for the arrest. *See* [R. 39-1, p. 12]. The Court considers this argument to be waived, since it is well settled that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)); *see also Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995) (observing that "[w]e consider issues not fully developed and argued to be waived"). Even considering this argument, contrary to Defendants' claim, "[i]n some cases, liability can attach to non-arresting officers, but the inquiry still turns on probable cause for the arrest itself." *Gardner v. Evans*, 920 F.3d 1038, 1064 (6th Cir. 2019).

And the evidence of record indicates that the facts asserted in the arrest warrant affidavit were supported by Lawson's investigation and interviews concerning the events on July 7, 2021. Lawson testified that he measured the mailbox locations as part of his investigation and believed the mailboxes were on the postal service's easement. [R. 50-1, p. 21:12–21]. Lawson further testified that before obtaining the arrest warrant, he called the post office to confirm the mailboxes were within the easement. *Id.* at 29:19–30:9. As such, he determined Plaintiff did not have a right to remove them because they were located in the right of way. [R. 39-7]; [R. 50-1, pp. 29:19–30:9]. Plaintiff contends that because Lawson did not know about the easement at the time of their conversation, "[t]he future argument by Defendant that the mail boxes (sic) in question were on a right of way easement on [Plaintiff]'s property is irrelevant, as Lawson did not know that fact at the time of his confrontation with [Plaintiff]." [R. 47, p. 3]. But, in fact, Lawson had already measured for the easement before talking with Plaintiff, a detail that is relevant in determining whether Plaintiff had committed criminal mischief or had a right to remove the mailboxes. [R. 50-1, pp. 21:12–21, 29:19–30:9]. And regardless, Lawson did not arrest Plaintiff at the scene and testified that, before obtaining the arrest warrant, he called the post office to confirm the mailboxes were in the right-of-way. *Id.* at 29:19–30:9.

And Lawson gathered additional information at the scene to support probable cause for the warrant. Ridner testified that she "told [Officer Lawson] that [Plaintiff] had tore our mailboxes down and brought them down and put them . . . . He drove down there, throwed them out in our yards." [R. 36, p. 19:1–5]. Moreover, while Plaintiff in his deposition testified that he did not admit at the scene to "destroying" the mailboxes, *see* [R. 50-2, p. 95:1–5], Lawson testified that Plaintiff admitted to him that he had removed the mailboxes:

> Q:    Well, let's talk about the Complaint against Mr. Helton because I haven't discussed that. So during the course of your investigation, did you have reason to believe that Mr. Helton had in fact committed an offense?
>
> A:    Yes, sir. He said he did.
>
> Q.    Okay. And in response to your investigation, what action, if any, did you take?
>
> A.    I obtained a warrant for his arrest.

[R. 50-1, p. 13:2–10]. A person's admission of criminal conduct strongly supports the probable cause determination. *See United States v. Vining*, 675 F.Supp.3d 778, 791 (E.D. Mich. 2023) ("An inculpatory statement, such as Defendant's admission that he was carrying five pounds of marijuana, is sufficient to support probable cause for an arrest."); *see also Griesmar v. City of Stow, Ohio*, No. 22-3151, 2022 WL 17581658, at *5 (6th Cir. Dec. 12, 2022) (determining that the defendant's admission to possessing marijuana in her vehicle "further developed probable cause to arrest her"). Further, Lawson also took pictures at the scene, considered the cost of the damage to the mailboxes, and determined that the total would be well above $500. [R. 39-5]; [R. 39-6]. Based on his investigation at the scene and given the total cost of the damage, *see* [R. 39-6], the easement measurement and his discussion with the post office about the length of the right of way, *see* [R. 39-7]; [R. 50-1, pp. 29:19–30:9], and Plaintiff's admission in front of Lawson and Ridner that he uprooted the mailboxes, *see* [R. 36, p. 22:23–24]; [R. 50-1, p. 13:2–10], the "facts and circumstances within [Lawson's] knowledge . . . [were] sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that [Plaintiff] committed . . . [the] offense [of Criminal Mischief in the First Degree]." *Provience*, 529 Fed. App'x at 667.

In sum, the Court finds that Plaintiff has wholly failed to respond to Defendants' arguments regarding qualified immunity, and he has similarly failed to clearly allege any facts to support his § 1983 claim against Lawson, much less point to evidence of record or legal authority. The Court

therefore finds that summary judgment is appropriate on Count 1, the § 1983 claim against Lawson in his individual capacity.

### 2.    Official Capacity Claim

Plaintiff also sued Defendant Lawson in his official capacity. [R. 1]. "An official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) ("[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent."); *Claybrook v. Birchwell*, 199 F.3d 350, 356 n.4 (6th Cir. 2000) ("An official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents."); *Moran v. Ky. State Police*, No. 1:23-CV-51-GNS, 2024 WL 102217, at *3 (W.D. Ky. Jan. 9, 2024).

In this case, the Court must evaluate the claims against Defendant Lawson in his official capacity as claims against Whitley County because, even though his employer is the Whitley County Police Department, "suing a police department is the functional equivalent of suing the city [or county] itself," making Whitley County the proper entity for the official capacity claims. *Snider v. City of Lyndon*, No. 3:23-CV-486-RGJ, 2024 WL 3165322, at *3 (W.D. Ky. June 24, 2024); *see also Alkire,* 330 F.3d at 810. Here, Plaintiff has sued Whitley County Fiscal Court in Count III, which the Court will construe as a claim against Whitley County. *See Reid v. Hopkins Cnty. Fiscal Ct.*, 4:21CV-P14-JHM, 2021 WL 5435241, at *4 (W.D. Ky. Nov. 19, 2021) (construing claim against a fiscal court as a claim against the county, which had not been named as a defendant); *Doe v. Magoffin Cnty. Fiscal Ct.*, 174 Fed. App'x 962, 971 (6th Cir. 2006) ("Kentucky courts have treated fiscal courts as county governments and thus have permitted fiscal courts to share sovereign immunity with county governments."); *Simpkins v. Boyd Cnty. Fiscal*

*Ct.*, No. 0: 19-098-DCR, 2022 WL 6785721, at *3 (E.D. Ky. Oct. 11, 2022) ("In Kentucky, fiscal courts are county governments."). Accordingly, to the extent that the claim against Lawson in his official capacity is truly a suit against the county, the claim will be dismissed as duplicative. *See Jones v. Perry Cnty. Fiscal Ct.*, 185 F.Supp.3d 947, 960 (E.D. Ky. May 11, 2016) (citation omitted).

Moreover, even if not duplicative, the official capacity claims against Lawson, construed as claims against Whitley County, fail. "Sovereign immunity—which protects states and their instrumentalities from suit in federal court—does not extend to § 1983 claims against counties." *Hart v. Lawson*, No. 6:20-CV-147, 2024 U.S. Dist. LEXIS 11620, at *46 n.17 (E.D. Ky. Jan. 23, 2024). Still, "[s]ection 1983 does not permit a plaintiff to hold a municipality . . . automatically liable for the unconstitutional actions of its employees under a vicarious-liability theory." *Dibrell v. City of Knoxville, Tenn.*, 984 F.3d 1156, 1165 (6th Cir. 2021) (internal citations and quotation marks omitted); *Monell v. Dep't of Soc. Servs. of New York*, 426 U.S. 658, 694 (1978). Nevertheless, "the statute does permit a municipality to be held liable if the plaintiff establishes that the municipality's policy or custom is what led to a violation of the plaintiff's constitutional rights." *Dibrell*, 984 F.3d at 1165. "Axiomatically, however, [t]here can be no *Monell* municipal liability under § 1983 unless there is an underlying unconstitutional act against the plaintiff." *Id.*

For the reasons stated above, the Court has determined Plaintiff has failed to identify— much less demonstrate a genuine issue of material fact regarding—any "underlying unconstitutional act" by Lawson, and consequently no municipal liability lies. *Id.*; *see also Baker v. City of Trenton*, 936 F.3d 523, 535 (6th Cir. 2019) ("[W]here there has been no showing of individual constitutional violations . . . there can be no municipal liability."); *Hall v. Sakovich*, No. 3:21-CV-276-KAC-DCP, 2022 U.S. Dist. LEXIS 68378, at *3–4 (E.D. Tenn. Apr. 13, 2022)

- 19 -

("Because there was no underlying Constitutional violation, the City of Knoxville cannot be liable for claims that require an underlying Constitutional violation."). Moreover, even if there was an "underlying unconstitutional act," Plaintiff has wholly failed to identify "any specific policy" or "custom" that "led to a violation" of Plaintiff's right; in other words, he has not pointed to any evidence that such policy or custom even existed or that Whitley County "*caused* [any] violation to happen." *Dibrell*, 984 F.3d at 1165; [R. 39-1, p. 19]; *Hart*, 2024 U.S. Dist. LEXIS 11620, at *47 (citing *Bright v. Gallia Cnty.*, 753 F.3d 639, 660 (6th Cir. 2014)); *see also* [R. 47].

Accordingly, the Court will grant Defendants' Motion for Summary Judgment on Count I as to the official capacity claim against Lawson, which the Court construes as a claim against Whitley County.

### B.  Count III: § 1983 Claim for Negligent Hiring and Retention

In Count III, Plaintiff sued Whitley County Sheriff Danny Moses, in his official capacity, and Whitley County Fiscal Court under 42 U.S.C. § 1983 for violation of his constitutional rights in implementing a policy or practice of negligently hiring, training, and supervising its officers concerning the "proper use of probable cause, force and arrest." [R. 1, ¶¶ 18–21]. As with the claims against Lawson in his official capacity, the official capacity claims against Sheriff Moses are the functional equivalent of suing Whitley County. *Alkire*, 330 F.3d at 810. The Court therefore construes this claim as being against Whitley County. *See Reid*, 2021 WL 5435241, at *4.

Defendants argue that "Plaintiff's response [does not] address any of the arguments raised by Defendants Moses and Whitley County Fiscal Court supporting their arguments in favor of Summary Judgment." [R. 50, p. 5]. The Court agrees. Plaintiff utterly failed to address Defendants' arguments and proffered evidence in his response, and, notably, failed even to mention the Whitley County Fiscal Court or Sheriff Moses (or the county) in the response outside of the case caption.

[R. 47]. The Sixth Circuit's "jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (citing *Hicks v. Concorde Career Coll.*, 449 Fed. Appx. 484, 487 (6th Cir. 2011) (holding that a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in a response to a motion for summary judgment); *Clark v. City of Dublin*, 178 Fed. App'x 522, 524–25 (6th Cir. 2006) (recognizing that the failure to respond properly to motion for summary judgment arguments constitutes abandonment of a claim); *Conner v. Hardee's Food Sys.*, 65 Fed. App'x 19, 24–25 (6th Cir. 2003); *Colston v. Cleveland Pub. Libr.*, No. 1:12–CV–204, 2012 WL 3309663, at *2 n.2 (N.D. Ohio Aug. 13, 2012) (deeming a claim abandoned and granting summary judgment when a plaintiff "did not respond or even mention [the] claim in her opposition to Defendants' motions for summary judgment"). The Court therefore considers this claim to be abandoned and will grant Defendants' motion on Count III.[12]

For all these reasons, the Court will grant Defendants' motion on Count III.

### C.    Count II: State Claims for Assault and Battery, Outrageous Conduct, and Intentional Infliction of Emotional Distress[13]

#### 1.    Battery

---

[12] It is unclear whether Count III includes a corresponding state law claim. In any event, for the same reasons, the Court finds it has been abandoned. Moreover, sovereign immunity shields Whitley County, and the individual defendants in their official capacity, from any state law claims. *See Briggs v. Hogan*, No. 21-5581, 2022 WL 985825, at *3 (6th Cir. Apr. 1, 2022); *see also Hart*, 2024 U.S. Dist. LEXIS 11620, at *46 n.17.

[13] Neither party has addressed the Court's exercise of supplemental jurisdiction over the remaining state law claims. Because the Court has dismissed Plaintiff's federal claims, the remaining claims fall exclusively under Kentucky law. Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "[D]eclining to exercise supplemental jurisdiction after dismissing a federal claim of original jurisdiction is purely discretionary" and "remains a doctrine of discretion, not a plaintiff's right." *Miller v. Collins*, No. 23-3191, 2023 WL 7303305, at *4 (6th Cir. Nov. 6, 2023). The Court will exercise supplemental jurisdiction over the remaining state law claims since they are sufficiently related.

Under Kentucky law, "common-law battery is defined as any unlawful touching of the person of another, either by the aggressor himself, or by any substance set in motion by him." *Browning v. Edmonson Cnty., Ky.*, 18 F.4th 516, 531 (6th Cir. 2021) (internal quotation marks omitted). Under the Restatement (Second) of Torts,

> [a]n actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other . . . and (b) a harmful contact with the person of the other directly or indirectly results.

Restatement (Second) of Torts §§ 13, 18 (Am. L. Inst. 1965); *Vitale v. Henchey*, 24 S.W.3d 651, 657 (Ky. 2000); *see also Dahl v. Kilgore*, No. 3:18-CV-00501-CRS, 2020 WL 6706367, at *13 (W.D. Ky. Nov. 13, 2020) (reciting the elements required for battery under the Restatement (Second) of Torts)). The intent required "is an intent to make contact with the person, not the intent to cause harm." *Pendleton v. Fassett*, No. 08-227-C, 2009 WL 2849542, at *14 (W.D. Ky. Sept. 1, 2009) (quoting *Vitale*, 24 S.W.3d at 657). Whether the contact is offensive depends on whether "it offends a *reasonable* sense of personal dignity." Restatement (Second) of Torts § 19 (Am. L. Inst. 1965) (emphasis added); *see Warinner v. N. Am. Sec. Sols., Inc.*, No. 3:05-CV-244-S, 2008 WL 2355727, at *4 (W.D. Ky. June 5, 2008) ("Kentucky courts follow the Restatement (Second) of Torts, which provides that the unlawful contact 'must be one which would offend the ordinary person' and 'which is unwarranted by the social usages prevalent at the time and place at which it is inflicted.'" (quoting Restatement (Second) of Torts § 19 (Am. L. Inst. 1965) cmt. a.) (internal citation omitted)).

Defendants argue they are entitled to summary judgment on the assault and battery claims because "there was no threat or an unwanted touching or actual touching that took place, nor was there intent to assault [or] to batter the [plaintiff]." [R. 39-1, p. 14 (citing Ridner's and Plaintiff's

testimony)]. Indeed, Plaintiff testified Lawson never touched or threatened him during the brief interaction between the two:

> Q:    Did he ever touch you in any way?
>
> A:    No. No. He was going to pull his gun on me, but no.
>
> Q:    Okay. He never touched you?
>
> A:    No.

[R. 50-2, p. 96:24-97:3.

> Q:    He never said anything to threaten you, verbally?
>
> A:    No. No. He got in his car and left.

*Id.* at 98:12–14].

> Q:    Okay. All right. So in Count 2, you allege assault and battery. As I understand you to say, Officer Lawson never touched you, correct?
>
> A:    Uh-huh (affirmative response). That's right.
>
> Q:    So he didn't physically harm you in any way, did he?
>
> A:    No, he did not.

*Id.* at 122:23–123:5. Plaintiff's testimony alone dooms his battery claims. Ridner similarly testified that she never saw Officer Lawson touch Plaintiff:

> Q:    To your knowledge, did [Officer Lawson] ever place a hand on Mr. Helton?
>
> A:    No, sure didn't. He stood over there—even [Plaintiff] shaking this [paper] at him, didn't even say nothing.

[R. 36, p. 23:15–19, 21:8–15].

The defendants have therefore "inform[ed] the district court of the basis for [their] motion, and identif[ied] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which [they] believe demonstrate the

absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. Essentially, they have demonstrated an *absence* of a necessary element of the battery claim. The burden is therefore on Plaintiff to produce "specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial." *Bill Call Ford, Inc.*, 48 F.3d at 205 (citation omitted). In fact, "the nonmoving party has an *affirmative duty* to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d at 665 (emphasis added). The Court is not obligated to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.*

Here, Plaintiff has failed to cite to any evidence in the record whatsoever, nor any legal authority to support his claim. The Court therefore finds that he has failed to meet his burden of demonstrating a genuine issue of material fact, and the Court will grant summary judgment on the battery claim.

Nevertheless, scouring his response to find support for his battery claim (though not obligated to do so), the Court notes Plaintiff accuses Lawson of "snatching" the attorney letter from his hands and throwing it on his vehicle. [R. 47, p. 3]. But Plaintiff cited to nothing in the record to support his allegation that Lawson "snatched" the letter or otherwise battered him during the interaction involving the letter. Instead, Plaintiff testified that he showed Lawson the attorney letter and that Lawson "took" the letter Plaintiff offered and threw it on the vehicle. *See* [R. 50-2, pp. 92:6–13, 97:18–98:4]. And, at another point in his deposition, Plaintiff said that he "tried to give [Lawson] that piece of paper." *Id.* at 128:1–5. Other evidence in the record indicates that there was a civil exchange between Plaintiff and Officer Lawson. For instance, Ridner testified that she did not see Lawson take the letter or throw it on his vehicle; rather, she saw Plaintiff shake the

letter in Lawson's face but noted that Lawson remained entirely "professional" during the encounter. [R. 36, pp. 22:25, 23:1–20, 23:21–24].

Drawing all justifiable inferences in favor of Plaintiff, the evidence at most reflects Officer Lawson simply "took" the letter from Plaintiff as Plaintiff was handing it to him. [R. 36, pp. 22:25, 23:1–20, 23:21–24]; [R. 50-2, pp. 92:6–13, 97:18–98:4, 128:1–5]. While "[u]nder some circumstances, a defendant's offensive contact with an object attached to or identified with the plaintiff's body may be sufficient to constitute a battery," this is not one of those circumstances. *Workman v. United Fixtures Co.*, 116 F.Supp.2d 885, 896 (W.D. Mich. 2019); *compare Fisher v. Carrousel Motor Hotel, Inc*., 424 S.W.2d 627, 629–30 (Tex. 1967) (affirming jury verdict on battery claim where, even though the motel manager had not physically touched the plaintiff, he "forcefully dispossessed plaintiff" of the plate in his hands by "knocking or snatching" it and caused the plaintiff to feel "highly embarrassed and hurt" by the action), *with Workman*, 116 F. Supp.2d at 896 (granting summary judgment in favor of defendant on battery claim where the plaintiff claimed that the defendant "grabbed" a prescription from the plaintiff's hand, because, "even assuming that [the defendant] did remove a paper from [the plaintiff]'s hand, nothing in the record suggests that [the defendant]'s alleged actions amounted to an offensive contact battery"); *see also Wishnatsky v. Huey*, 584 N.W.2d 859, 861–62 (N.D. 1998) (affirming summary judgment in favor of the defendant on battery claim where the defendant pushed shut the door to his office while the plaintiff attempted to enter it because any contact was "momentary, indirect, and incidental, and, while rude and abrupt," the contact "would not be offensive to a reasonable sense of personal dignity"). Any possible contact between Plaintiff and Lawson was merely "incidental" when Plaintiff tried to hand the letter to Lawson, and nothing in the record indicates a harmful or offensive contact occurred. [R. 50-2. pp. 92:11–13, 97:18–98:4, 128:1–5].

- 25 -

### 2.    Assault

"[A]ssault occurs when one intentionally threatens to touch another." *Hadden*, 2018 WL 4222882, at *16; *see also Banks v. Fritsch,* 39 S.W. 3d 474, 480 (Ky. Ct. App. 2001). Further, the threat must be "under such circumstances as create a well-founded fear of imminent peril." *Brown v. Crawford,* 177 S.W.2d 1, 2–3 (Ky. 1944); *Smith v. Gowdy*, 244 S.W. 678, 679 (Ky. 1922), *abrogated on other grounds by*, *Osborne v. Keeney*, 399 S.W.3d 1 (Ky. 2012)) (citation omitted). "Intent is an essential element of assault. Words alone cannot constitute assault." *Linton v. Riddle*, No. 3:08-CV-605, 2010 WL 2106669, at *2 (W.D. Ky. May 24, 2010) (internal citations omitted).

As noted above, Defendants argue they are entitled to summary judgment on the assault and battery claims because "there was no threat or an unwanted touching or actual touching that took place, nor was there intent to assault [or] to batter the [Plaintiff]." [R. 39-1, p. 14 (citing Ridner's and Plaintiff's testimony)].  They cite to the following evidence as support.

First, Ridner described the interaction between Plaintiff and Defendant Lawson as a civil conversation. [R. 36, pp. 21:12–23:14]. Specifically, Ridner denied observing Officer Lawson place his hand on his holster:

Q:    Did you see the officer do anything in his interactions with Mr. Helton, that you thought was inappropriate?

A:    No, not a thing. No.

Q:    Did you ever see Officer Lawson place his hand on his firearm?

A:    Oh, no. Sure didn't.

Q:    No?

A:    No, I didn't.

Q:    Did you ever see him make any threatening gestures toward Mr. Helton?

A:    No.

> Q:    Did he ever make any verbal threats towards Mr. Helton?
>
> A:    No. Huh-uh (negative response).

*Id.* at 22:25, 23:1–14; *see also* [R. 50-1, p. 21:7–11].

More importantly, Plaintiff's own testimony demonstrates that he never feared imminent contact from Lawson, or that Lawson threatened him verbally or physically. [R. 50-2, pp. 97:4–17, 98:12–14]. Concerning Lawson placing his hand on his service weapon, Plaintiff explained he understood Lawson placed his hand on his holster in reaction to Plaintiff rummaging through his vehicle looking for the letter:

> Q:    All right. Did he ever brandish a weapon? Did he ever draw his weapon from his holster?
>
> A:    His – started to.
>
> Q:    Okay. Why? Why did he do that to you?
>
> A:    Because I opened the door to my truck.
>
> Q:    Okay. So you were in the truck when he showed up?
>
> A:    He pulled in behind me. He was getting out; I opened the truck to get this piece of paper.
>
> Q:     Uh-huh (affirmative response). Okay.
>
> A:    *And I guess that scared him*, and . . .
>
> Q:     So he put his hand on his side. Is that what you are saying?
>
> A:    Yeah. Yeah.

*Id.* at 97:4–17 (emphasis added). And, as mentioned, contrary to Plaintiff's assertion that Lawson "accosted him verbally by yelling at him," [R. 47, p. 3], Plaintiff testified to the opposite:

> Q:    He never said anything to threaten you, verbally?
>
> A:    No. No. He got in his car and left.

- 27 -

[R. 50-2, p. 98:12–14]. Indeed, the record reflects the only individual who potentially felt any apprehension during the exchange was Lawson, not Plaintiff.

The defendants have therefore "inform[ed] the district court of the basis for [their] motion, and identif[ied] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which [they] believe demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The burden is therefore on Plaintiff to produce "specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial." *Bill Call Ford, Inc.*, 48 F.3d at 205 (citation omitted). But in response, Plaintiff merely alleges Lawson "accosted him verbally by yelling at him, and made him feel threatened by placing his hand upon his service weapon in a threatening manner." [R. 47, p. 3]. Plaintiff does not cite to any evidence to support this allegation and, indeed, the record belies these bald assertions, as detailed above.

To the extent Plaintiff relies on the interaction with Lawson concerning the letter as support for his assault claim, *see id.* at 4 ("Lawson essentially assaulted Mr. Helton by grabbing his attorney's letter out of his hand and throwing it on to the hood of his truck")], as outlined above, the record fails to support that Plaintiff feared imminent contact from Lawson, or that he felt threatened verbally or physically. [R. 50-2, p. 97:4–17, 98:12–14]. Instead, it demonstrates, at most, that Lawson took the letter as Plaintiff offered it to him, *id.* at 92:6–13, 97:18–98:4, 128:1–5, and that Plaintiff had no "well-founded fear of imminent peril." *Brown,* 177 S.W.2d at 2–3; *see also Linton*, 2010 WL 2106669, at *2–3; *Williams v. Boggs*, No. 6:13-CV-65-DCR, 2014 U.S. Dist. LEXIS 18328, at *19 (E.D. Ky. Feb. 13, 2024) ("There is no evidence that Boggs acted with intent to harm Williams . . . . It is simply not enough that Boggs' statements, raised voice, or posture might have caused Williams to subjectively feel uncomfortable."). The Court must

consider whether the respondent has identified more than "[t]he mere existence of a scintilla of evidence in support of [the respondent's] position." *Anderson*, 477 U.S. at 252. He has not.[14] The Court therefore finds that Plaintiff has failed to meet his burden at this stage.

Accordingly, Lawson is entitled to summary judgment on the assault and battery claims in Count II.

### 3.    Intentional Infliction of Emotional Distress[15]

Defendants contend Plaintiff's claim for intentional infliction of emotional distress (IIED) fails because there "has been no showing of outrageous conduct to rise to the level of intentional infliction of emotional distress. The only complaint referenced in Plaintiff Helton's testimony was that he didn't like Defendant Lawson's attitude. He could not point to anything extreme and outrageous at all." [R. 39-1, p. 15 (internal quotation marks omitted)]. Even if Plaintiff could show "extreme and outrageous conduct," Defendants argue, he still "has failed to identify an expert that can causally connect [Defendant Lawson's] behavior with the Plaintiff's alleged severe emotional distress." *Id.*

Once again, Plaintiff wholly failed to respond to the motion concerning his IIED claim, other than generally describing his interaction with Lawson, and the Court will therefore grant

---

[14] The Court notes that Defendants' motion for summary judgment on the state law claims of battery, assault, fraud, and intentional infliction of emotional distress against Defendant Lawson in his official capacity must be granted as well. An official capacity claim is actually a claim against the "governmental agency itself." *Lewis*, 697 F.3d at 713. Accordingly, the Court construes these official-capacity claims as being against Whitley County. Whitley County is entitled to sovereign immunity on the state law claims. *See Morales v. City of Georgetown*, Nos. 2023-SC-0248-DG, 2023-SC-0265-DG, 2024 Ky. LEXIS 335, at *9 (Oct. 24, 2024) ("Accordingly, counties, as political subdivisions of the Commonwealth, enjoy the same sovereign immunity as the Commonwealth itself."); *Lexington-Fayette Urban Cnty. Gov't v. Smolcic*, 142 S.W.3d 128, 132 (Aug. 26, 2004) ("Kentucky counties are cloaked with sovereign immunity."); *Hart*, 2024 U.S. Dist. LEXIS 11620, at *58.

[15] Under Kentucky law, [t]he tort of outrageous conduct[ ] [is] also referred to as the intentional infliction of emotional distress ('IIED')." *Akers v. Roberts*, Nos. 2014-CA-001394-MR, 2014-CA-001778-MR, 2016 WL 1178681, at *6 (Ky. Ct. App. Mar. 25, 2016).

summary judgment on this claim.[16] *See* [R. 47]; *see also Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (citing *Hicks v. Concorde Career Coll.*, 449 Fed. Appx. 484, 487 (6th Cir. 2011) (holding that a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in a response to a motion for summary judgment); *Clark v. City of Dublin*, 178 Fed. App'x 522, 524–25 (6th Cir. 2006) (recognizing that the failure to respond properly to motion for summary judgment arguments constitutes abandonment of a claim); *Conner v. Hardee's Food Sys.*, 65 Fed. App'x 19, 24–25 (6th Cir. 2003); *Colston v. Cleveland Pub. Libr.*, No. 1:12–CV–204, 2012 WL 3309663, at *2 n.2 (N.D. Ohio Aug. 13, 2012) (deeming a claim abandoned and granting summary judgment when a plaintiff "did not respond or even mention [the] claim in her opposition to Defendants' motions for summary judgment").

### D.    Count IV: Common Law Fraud Claim

Defendants argue that "there was (sic) no fraudulent actions or statements made by Lawson and there is no proof of such . . . . Plaintiff's stipulation of probable cause and admissions remove any doubt that fraud was committed here. He also agreed to pay restitution, hardly an indication of fraud." [R. 39-1, p. 20]. The Court finds that the plaintiff also waived this claim by failing to address Defendants' argument in his response. Indeed, the response never even mentions the word "fraud." Again, the Sixth Circuit's "jurisprudence on abandonment of claims is clear: a plaintiff is

---

[16] The IIED claim would be subject to dismissal regardless, as it appears to be duplicative of the assault and battery claims, and IIED is a "gap filler" under Kentucky law. *See Watts v. Lyon Cnty. Ambulance Serv.*, 23 F. Supp. 3d 792, 813 (W.D. Ky. 2014) (explaining that a "plaintiff cannot proceed on an IIED claim where the alleged conduct makes out a claim for another tort for which emotional distress damages would be available" (citations omitted)); *see also Grace v. Armstrong Coal Co., Inc.*, 2009 WL 366239 at *3 (W.D. Ky. Feb. 13, 1999) ("[A]n IIED claim cannot be pled by itself, in tandem with another tort, or in the alternative as long as some other tort with adequate relief fits the facts."). An exception exists if the defendant solely intended to cause extreme emotional distress. *Green v. Floyd Co., Ky.*, 803 F.Supp.2d 652, 655 (E.D. Ky. 2011) (citing *Brewer v. Hillard*, 15 S.W.3d 1, 7–8 (Ky. App. 1999)). "But where the plaintiff merely alleges that emotional distress resulted from the defendants' conduct, not that their sole purpose in engaging in that conduct was to inflict that distress, the allegations fall outside this narrow exception and fail to state a viable IIED claim." *Bailey v. Aramark Corp.*, No. CV:16-343-JMH, 2017 WL 3841687, at *4 (E.D. Ky. Sept. 1, 2017) (citing *Vidal v. Lexington-Fayette Urban Co. Gov't*, No. 5:13-CV-117-DCR, 2014 WL 4418113, at *9 (E.D. Ky. Sept. 8, 2014)). Here, there are no allegations, much less evidence of record, to support this exception.

deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (citing *Hicks v. Concorde Career Coll.*, 449 Fed. Appx. 484, 487 (6th Cir. 2011)).

The Court will grant Defendants' Motion for Summary Judgment on Count IV.[17]

### E.  Count V: Punitive Damages

"Punitive damages is not a standalone claim in Kentucky." *Correll v. Mut. of Omaha Ins. Co.*, No. 6:19-CV-97-REW-HAI, 2023 WL 6880385, at *7 n.13 (E.D. Ky. Oct. 18, 2023). That is, "there must be a viable underlying cause of action for compensatory damages." *Thompson v. Lake of Cumberland Resort Cmty. Ass'n, Inc.*, No. 2021-CA-1419-MR, 2022 WL 4587624, at *4 (Ky. Ct. App. Sept. 30, 2022). Because all of Plaintiff's claims fail, the Court will not address this damages theory.

### IV.    CONCLUSION

In sum, the Court will grant Defendants' Motion for Summary Judgment on all of Plaintiff's claims.

Accordingly, **IT IS HEREBY ORDERED** as follows:

1.  Defendants Whitley County Fiscal Court, Danny Moses, and Mike Lawson's Motion for Summary Judgment, [**R. 39**], is **GRANTED**.

2.  A separate judgment will follow.

---

[17] Again, Whitley County is protected by sovereign immunity as to the state law claims against Defendant Lawson in his official capacity. *See supra* Section III.C.2 n.14. Accordingly, this claim is dismissed against Defendant Lawson in both his official and individual capacities.

This the 7th day of January, 2025.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY